UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JUSTIN MATTHEW ACOSTA,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.
_____/

Case No. 2:22-cv-164

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 7.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC) and James. The Court will also dismiss Plaintiff's Eighth Amendment claims against Defendant Minthorn premised upon the denial of clean clothes and the failure to clean his cell and provide fresh bedding. Plaintiff's Eighth Amendment claim against Defendant Minthorn premised upon the denial of showers while in quarantine for scabies remains in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the MDOC at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC itself, as well as Lieutenant Unknown Minthorn and Registered Nurse Unknown James.

Plaintiff alleges that he was placed in quarantine on February 11, 2022, because he had contracted scabies. (ECF No. 1, PageID.3.) He alleges that he was only given one shower from February 12, 2022, through February 23, 2022. (*Id.*) Plaintiff avers that he was supposed to receive one shower every 24 hours per protocol as part of his treatment. (*Id.*) Plaintiff alleges that he was not given clean clothes during this time and had to wash the "scabies infested" clothes by hand with "only lukewarm water and state soap." (*Id.*)

Plaintiff was released from quarantine on February 23, 2022, and was "sent back to the same cell where [he] contracted the scabies the first time." (*Id.*) Plaintiff alleges that the cell was never cleaned while he was in quarantine. (*Id.*) Plaintiff contends that Defendant Minthorn left him to suffer the effects of the scabies outbreak and took his showers away because he "was afraid to have any contact with [Plaintiff], fearing he might contract the scabies himself." (*Id.*) Plaintiff claims further that Defendant James "was not only in charge[] to help handle the outbreak, she refused to do the one job she was hired to do." (*Id.*) Plaintiff contends that because Defendant James refused to do her job, he had to "deal with custody officers that [were not] trained in dealing with these matters." (*Id.*)

Plaintiff has attached a copy of the MDOC's scabies treatment protocol to his complaint. Pursuant to that protocol, all bedding is to be removed, and all hard surfaces in the cell are to be treated "with disinfectant or bleach solution." (ECF No. 1-1, PageID.9.) Inmates should wear clean

4

clothes that have not been in the cell. (*Id.*) Exposed clothes "must be bagged for 4 days, and/or washed and dried in hot water and dryer." (*Id.*, PageID.11.) "Items that cannot be washed should be removed from body contact for 96 hours after treatment, allowing scabies to die off the body." (*Id.*) Moreover, "[a]ll prisoners will be showered every 24 hours." (*Id.*, PageID.12.)

Plaintiff has also attached copies of his grievances regarding the matter to his complaint. Those documents provide more support for his claims. Plaintiff argued that when he was sent back to the same cell, the "infected mattress, pillow, bedding[,] and [his] personal items had not been removed or secured or packed up." (*Id.*, PageID.13.) Plaintiff asked several officers to remove the items but was "told day after day that health care told them there was no need . . . because if scabies were still in [the] cell they would have died off because they had no host to cling to." (*Id.*) Plaintiff, however, contracted scabies again on March 7, 2022, and had to return to quarantine until March 18, 2022. (*Id.*)

The officer who investigated Plaintiff's grievance interviewed Defendants Minthorn and James. (*Id.*, PageID.14.) Defendant Minthorn "stated that his staff had reported that [Plaintiff] had refused his showers during the time period in question." (*Id.*) Defendant James "verified that [Plaintiff] may have become reinfected when clothes and bedding were not changed out while he was locking in Ward V. However, his other items that remained in G Unit were left for far longer than the 96 hour quarantine time required and most likely played no role in [his] reinfection." (*Id.*)

Plaintiff appealed the denial of his grievance, arguing that he never once refused his shower, and that Defendant Minthorn personally told him that he had made the decision to not allow Plaintiff to shower. (*Id.*, PageID.15.) In response, it was noted that "[a]fternoon shift command did not follow the scabies protocol accurately to ensure you were showered after you received treatment." (*Id.*, PageID.16.) The afternoon shift "incorrectly assumed [Plaintiff's]

5

shower was to be administered by health care. When administrative staff [were] made aware the situation was corrected." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights. (ECF No. 1, PageID.3.) He seeks $75,000.00 in damages. (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, Plaintiff asserts violations of his Eighth Amendment rights.

### A. Claims Against the MDOC

Plaintiff has named the MDOC as a Defendant in this matter. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768,

7

771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff cannot maintain his claims against the MDOC, and the Court will dismiss the MDOC as a Defendant.

### B.    Claims Against Defendants Minthorn and James

Plaintiff contends that Defendants Minthorn and James violated his Eighth Amendment rights by not ensuring that he received showers and clean clothes while in quarantine. Plaintiff also suggests that they failed to clean his cell and that he contracted scabies again when he was placed back into that cell upon release from quarantine. Plaintiff's claim can be characterized as both a conditions of confinement claim and a claim for failure to ensure adequate medical treatment. *See Pickens v. Ala. Dep't of Corr.*, No. 4:16-cv-1854, 2017 WL 2821817, at *2–4 (N.D. Ala. May 12, 2017) (construing an inmate's similar claim regarding scabies as both types of claims), *Report and Recommendation adopted by* 2017 WL 2806832 (N.D. Ala. June 29, 2017).

#### 1.    Conditions of Confinement Standard

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 2. Medical Care Standard

Moreover, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

9

standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on

"the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

11

a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 3. Analysis

While Plaintiff alleges that he was quarantined for contracting scabies, he does not describe the symptoms he suffered. The United States District Court for the Eastern District of Michigan has described scabies as follows:

> Scabies is an infestation of tiny mites called Sarcoptes scabiei. They burrow and lay eggs in human skin. *See* https://www.webmd.com/skin-problemsand-treatments/ss/slideshow-scabies-overview. The rash can appear as small red bumps, welts or scaly lesions that can transform into scales, blisters, and bleeding. Scabies is contagious and typically spreads through skin-to-skin contact. It may also transmit through shared personal items such as bedding, clothes, furniture or towels. Scabies infestations often lead to incessant itching which may cause open sores, secondary bacterial infections, and/or secondary infestations of microorganisms.

*Pearson v. Mich. Dep't of Corr.*, Nos. 19-10707, 19-10771, 2021 WL 3079898, at *1 (E.D. Mich. July 21, 2021). While Plaintiff does not allege that he suffered those symptoms, it is clear from his complaint that he was diagnosed with scabies and placed in quarantine to prevent the spread of scabies to others. The Court, therefore, concludes that Plaintiff has sufficiently set forth a serious medical need. *See Ciccone v. Sapp*, 238 F. App'x 487, 489 (11th Cir. 2007).

Plaintiff also contends that he was denied showers, despite needing them as part of his treatment protocol, and clean clothes. Generally, a denial of showers for periods of time similar to one alleged by Plaintiff does not implicate the Eighth Amendment. *See Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment). Moreover, "[i]n [the Sixth] Circuit, a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation." *See Bostic v. Mehr*, No. 20-1031-SHM-cgc, 2021 WL 5999305, at *5

(W.D. Tenn, Dec. 20, 2021) (citing *Walker v. State Dept. of Corr.*, No. 98-6586, 2000 WL 32057, *1–2 (6th Cir. Jan. 7, 2000)). However, a denial of clean clothes may constitute an Eighth Amendment violation "only when the inmate claims to have 'suffered a physical injury or a disease as a result of these conditions.'" *Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013). Here, Plaintiff contends that he had to suffer from the scabies for the entire time he was in quarantine because of the lack of showers and clean clothing. While officials denied Plaintiff's grievances on the basis that he refused his showers while in quarantine, Plaintiff maintains that he never did so. As noted *supra*, the MDOC's treatment protocol indicated that clean clothes are to be provided and that inmates "will be showered every 24 hours." (ECF No. 1-1, PageID.12.)

Plaintiff also contends that when he was released from quarantine, he was placed back into the same cell he had been in before. He alleges that the cell was never cleaned out. (ECF No. 1, PageID.3.) In his grievance, Plaintiff indicated that his bedding had not been removed and changed. (ECF No. 1-1, PageID.13.) MDOC protocol indicates that bedding must be removed, the cell must be disinfected, and new bedding must be provided. (*Id.*, PageID.9, 12.) Moreover, as the Eastern District of Michigan noted in *Pearson*, scabies can be transmitted through items such as bedding. *Pearson*, 2021 WL 3079898, at *1. Plaintiff's grievances indicate that he contracted scabies a second time when he returned to that cell. Taking Plaintiff's allegations in the light most favorable to him, the Court concludes that he has sufficiently suggested that he was denied basic measures of sanitation while in quarantine and immediately thereafter when he was placed back into the same cell. *See Pickens*, No. 2017 WL 2821817, at *4 (concluding same when inmate was forced to return to a scabies-infested cell).

14

Plaintiff, therefore, has sufficiently met the objective prong of his Eighth Amendment claim, whether characterized as a conditions of confinement claim or a failure to provide adequate medical care claim. The Court will consider below whether he has sufficiently alleged facts suggesting that Defendants Minthorn and James were deliberately indifferent to his needs.

### a. Defendant James

In his complaint, Plaintiff contends that Defendant James was "in charge to help handle the outbreak [and] refused to do the one job she was hired to do." (ECF No. 1, PageID.3.) Plaintiff's grievances indicate that Defendant James was interviewed during the investigation into his complaints. (ECF No. 1-1, PageID.14.) During that interview, Defendant James "verified that [Plaintiff] may have become reinfected when clothes and bedding were not changed out while he was locking in Ward V." (*Id.*)

Plaintiff's allegations against Defendant James are too scant for the Court to infer that she was deliberately indifferent to Plaintiff's conditions of confinement and medical needs. Nothing in the complaint and the exhibits attached thereto permit the Court to infer that Defendant James knew that Plaintiff was not receiving showers and clean clothes. Likewise, nothing in the complaint suggests that Defendant James was personally responsible for ensuring that Plaintiff's cell was cleaned and that his bedding was changed. Plaintiff simply has not alleged sufficient facts to show that Defendant James was deliberately indifferent to a substantial risk to Plaintiff's health.

Plaintiff's complaint suggests that Defendant James was responsible for overseeing that custody officers carried out his treatment protocol. (*Id.*, PageID.3.) Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional

15

behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Plaintiff has simply failed to allege that Defendant James engaged in any active unconstitutional behavior. Accordingly, his Eighth Amendment claims against her will be dismissed.

### b. Defendant Minthorn

As noted above, Plaintiff contends that his Eighth Amendment rights were violated in three ways during his scabies quarantine: (1) he was not provided showers despite needing them as part of his treatment; (2) he was not provided clean clothes; and (3) his cell was not cleaned and fresh bedding was not provided before he was released from quarantine and placed back into that same cell. (ECF No. 1, PageID.3.) Plaintiff's complaint and the exhibits thereto, however, are wholly devoid of facts from which the Court could infer that Defendant Minthorn was personally responsible for denying Plaintiff clean clothes and for failing to ensure that his cell was cleaned and his bedding was changed. Thus, any Eighth Amendment claims against Defendant Minthorn premised upon the denial of clean clothes and the failure to clean his cell and provide fresh bedding will be dismissed.

In his complaint, Plaintiff contends that Defendant Minthorn took Plaintiff's showers away despite Plaintiff's treatment protocol because Defendant Minthorn was afraid to have contact with Plaintiff and contract scabies himself. (ECF No. 1, PageID.3.) In his grievances, Plaintiff averred that Defendant Minthorn told Plaintiff that he personally made the decision to refuse to allow Plaintiff to shower. (ECF No. 1-1, PageID.15.) Plaintiff states that he never refused his showers and that Defendant Minthorn's statement otherwise was a lie. (ECF No. 1, PageID.3; ECF No. 1-1, PageID.14.) Plaintiff's complaint permits an inference that Defendant Minthorn intentionally

16

interfered with his treatment protocol by not allowing him showers. *See Estelle*, 429 U.S. at 104–05. Plaintiff's complaint also permits an inference that Defendant Minthorn disregarded an excessive risk to Plaintiff's health by not allowing him showers. *See Farmer*, 511 U.S. at 834. Plaintiff, therefore, has set forth a plausible Eighth Amendment claim against Defendant Minthorn based upon the denial of showers, whether characterized as a conditions of confinement claim or a failure to provide adequate medical care claim. *See Pickens*, 2017 WL 2821817, at *3–4 (finding that the inmate-plaintiff had set forth both a conditions of confinement claim and deliberate indifference to medical needs claim premised upon the officer's decision to leave the plaintiff in the "scabies infested cell," causing him to contract scabies twice more).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC and James will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's Eighth Amendment claims against Defendant Minthorn premised upon the denial of clean clothes and the failure to clean his cell and provide fresh bedding. Plaintiff's Eighth Amendment claim against Defendant Minthorn premised upon the denial of showers while in quarantine for scabies remains in the case.

An order consistent with this opinion will be entered.

Dated: November 8, 2022

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge